UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

GEORGE & COMPANY LLC,

       Plaintiff,

v.                            Case No:  2:18-cv-154-FtM-38MRM

SPIN MASTER CORP, SPIN
MASTER U.S. HOLDINGS, INC.,
SPIN MASTER LTD, SPIN MASTER,
INC., CARDINAL INDUSTRIES, INC.
and JOEL BERGER,

       Defendants.

_____/

## **OPINION AND ORDER**[1]

Before the Court is Defendants Spin Master Corp., Spin Master U.S. Holdings, Inc., Spin Master Ltd., Spin Master Inc., Cardinal Industries, Inc., and Joel Berger's Motion to Dismiss Plaintiff's Third Amended Complaint (Doc. 63) and George & Company LLC's Response in opposition (Doc. 67).

## **Background**

Plaintiff George & Co. is the owner of trademarks relating to a dice game called LCR or Left Center Right.  (Doc. 55 at 11-13).  George & Co. entered into a license agreement with Cardinal Industries, Inc. that gave Cardinal the right to manufacture and

---

[1] Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or websites.  These hyperlinks are provided only for users' convenience.  Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

sell an electronic version of LCR until December 31, 2011.  (Doc. 32-1).  Under the Agreement, Cardinal would do nothing in derogation or dilution of certain designs and marks relating to LCR during the Agreement's term "or any time thereafter."  (Doc. 55 at 15).  The Agreement also had confidentiality and choice-of-venue clauses.  The choice-of-venue clause read:

> The validity, construction and performance of this Agreement shall be governed by, and interpreted in accordance with, the laws of the State of Florida. In any dispute relating to this Agreement, the parties hereto admit venue and submit themselves to the exclusive jurisdiction of the tribunals of the United States District Court for Middle District of Florida, expressly waiving any venue to which they may be entitled by their present or future domiciles.

(Doc. 55 at 16).

Besides selling the electronic LCR, Cardinal distributed a conventional, non-electronic version of LCR to Walmart, Toys R Us, and Kohl's.  (Doc. 41-1 at 6).  Cardinal distributed the conventional version under purchase orders that Cardinal sent to George & Co., and not under the Agreement.  (Doc. 64-2 at 3).  Cardinal became an important distributer of LCR, and George & Co. relied on Cardinal's President, Joel Berger, to represent its interests to national retailers. (Doc. 41-1 at 7-9).

Trouble started when Cardinal was acquired by Spin Master[2], which sells a game identical to LCR called, "PassPlay: The Game of LeftCenterRight."  (Doc. 55 at 16-26).  Sometime after the acquisition, PassPlay started replacing LCR on retail shelves, and retailers fulfilled orders for LCR with PassPlay.  (Doc. 41-1 at 15-34).  Spin Master and

---

[2] George & Co. sues Spin Master Corp., Spin Master U.S. Holdings, Inc., Spin Master Ltd., and Spin Master, Inc.  In this Opinion and Order, the Court collectively refers to these defendants as "Spin Master" or the "Spin Master Defendants."

third-party websites and retailers have used "LCR," "Left Center Right," and variations thereof to identify PassPlay.  (Doc. 55 at 27-37).

George & Co. sued Defendants, along with Spin Master Acquisition, Inc. and Bonnie Berger Canner, and the Court dismissed the First Amended Complaint in part for lack of personal jurisdiction over all Defendants but Cardinal.  (Doc. 46).  George & Co. filed a Third Amended Complaint to drag Spin Master and Berger back into the case.  (Doc. 55).  Defendants again move to dismiss, arguing this Court lacks personal jurisdiction and challenging Count IV under Rule 12(b)(6).  (Doc. 63).

## Discussion

Courts consider two questions when asked to exercise jurisdiction over out-of-state defendants: "(1) whether personal jurisdiction exists under the forum state's long-arm statute; and (2) whether exercising jurisdiction over the nonresident defendant would violate the Due Process Clause of the Fourth Amendment."  *Rowe v. Gary, Williams, Parteni and Gary, P.L.L.C.*, 723 F. App'x 871, 874 (11th Cir. 2018) (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)).  George & Co. bears the initial burden of alleging facts sufficient to establish a *prima facie* case of jurisdiction.  *Wolf v. Celebrity Cruises, Inc.*, 683 F. App'x 786, 790 (11th Cir. 2017).  The burden then shifts to Defendants to rebut George & Co.'s allegations.  *Id.*  If the rebuttal affidavits succeed, the burden "shifts back to [George & Co.] to produce evidence supporting jurisdiction unless those affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction."  *Id.* (quoting *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1268-69 (11th Cir. 2002)).  If the parties' evidence conflicts, "the court must construe all reasonable inferences in favor of the plaintiff."  *Id.*

George & Co. presents three arguments to trigger Florida's long-arm statute, Fla. Stat. § 48.193(1)(a): (1) Cardinal consented, on behalf of itself and Spin Master, to the jurisdiction of this Court in all disputes relating to the Agreement; (2) Cardinal breached the Agreement by failing to return or destroy inventory and production implements; and (3) Cardinal, Spin Master, and Berger committed tortious acts in Florida. (Doc. 67). Before addressing these arguments, Florida law requires the Court to first consider "whether the allegations of the complaint state a cause of action." *Dollar Rent a Car, Inc. v. Westover Car Rental, LLC*, No. 2:16-CV-363-FTM-29C, 2017 WL 5495126, at *3 (M.D. Fla. Nov. 16, 2017) (quoting *PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 808 (11th Cir. 2010)).

### A. Pleading Sufficiency of the Complaint

The Court considered the sufficiency of George & Co.'s nine counts in a previous order. (Doc. 46). Counts I-III and V-IX survived scrutiny, and Defendants do not challenge them here. But the Court dismissed Count IV (breach of the covenant of good faith and fair dealing) as duplicative of the breach-of-contract claim in Count I. (Doc. 46). George & Co. has tried to resuscitate Count IV by adding paragraphs 136 and 137 to the Third Amended Complaint. (Doc. 55 at 50-51). Defendants argue that Count IV remains duplicative of Count I despite the new allegations, and the Court agrees. Even with paragraphs 136 and 137, Count IV is based on the same conduct underlying Count I: Cardinal shared confidential information with Spin Master and replaced LCR with PassPlay on store shelves.

George & Co. sufficiently pled Counts I-III and V-IX of the Third Amended Complaint for the reasons stated in the Court's previous order, but Count IV is duplicative of Count I and will be dismissed.

## B. The Reach of Florida's Long-Arm Statute

George & Co. proceeds under the same three subsections of Florida's long-arm statute that the Court addressed before, but the parties have submitted new evidence and arguments for the Court to consider.

### 1. Consent

George & Co. renews its argument that Cardinal consented to jurisdiction in Florida when it executed the License Agreement. Fla. Stat. § 48.193(1)(a)(9) grants parties the right to confer personal jurisdiction by agreement, but the agreement must:

> (1) include a choice of law provision designating Florida Law as the governing law, (2) include a provision whereby the non-resident agrees to submit to the jurisdiction of the courts of Florida, (3) involve consideration of not less than $250,000, (4) not violate the United States Constitution, and (5) either bear a substantial or reasonable relation to Florida or have at least one of the parties be a resident of Florida or incorporated under its laws.

*Dollar Rent a Car*, 2017 WL 5495126 at *5. George & Co.'s first attempt to invoke subsection (1)(a)(9) failed because it did not meet the $250,000 threshold, which "may be satisfied by consideration on the face of the contract and from transactions arising from the contract." *Corp. Creations Enters. LLC v. Brian R. Fons Attorney at Law P.C.*, 225 So. 3d 296, 302 (Dist. Ct. App. Fla. 2017).

In the Third Amended Complaint, George & Co. pleads that it and Cardinal "anticipated that the sales of the product covered by the agreement would exceed $250,000.00 in the aggregate." (Doc. 55 at 13-14). Defendants correctly argue that George & Co. cannot rely on *anticipated* consideration when pleading jurisdiction under

5

Fla. Stat. § 48.193(1)(a)(9). (Doc. 63 at 5-6). In response, George & Co. submitted evidence that sales under the Agreement did, in fact, exceed $250,000. (Doc. 67-1 at 3). But this evidence does not cure George & Co.'s deficient pleading. Federal pleading standards and the shifting burden give defendants notice of a plaintiff's jurisdictional argument and an opportunity to rebut. The Court will not undermine this process by allowing George & Co. to ambush Defendants with a new theory of jurisdiction in its Response.

Because the Third Amended Complaint establishes no *prima facie* case for consent jurisdiction, George & Co. cannot rely on Fla. Stat. § 48.193(1)(a)(9). But the evidence suggests facts that, if properly pled, might satisfy Florida's consent jurisdiction requirements. The Court will therefore give George & Co. another opportunity to amend its complaint to address this pleading deficiency.

2. Breach of Contract in Florida

George & Co. has used the same tactic to support jurisdiction over Defendants based on Cardinal's breach of the Agreement. Under Fla. Stat. § 48.193(1)(a)(7), Florida courts can exercise jurisdiction over parties who "breach a contract in this state by failing to perform acts required by the contract to be performed in this state." The Court rejected George & Co.'s previous attempt to proceed under this subsection because the provisions Cardinal allegedly breached required no acts to be performed in Florida.

In its Response, George & Co., for the first time, accuses Cardinal of breaching the Agreement by failing to return inventory and production implements after the Agreement expired. (Doc. 67 at 6). But again, George & Co.'s new argument does not cure its failure to plead a *prima facie* case for jurisdiction under Fla. Stat. §

6

48.193(1)(a)(7). George & Co.'s argument also fails because this new breach has no relation to the breach alleged in the complaint, and personal jurisdiction only attaches if the "breach formed the bases for the cause of action for which relief is sought." *Olson v. Robbie*, 141 So. 3d 636, 640 (Dist. Ct. App. Fla. 2014).

George & Co. has not shown that this Court can extend jurisdiction to Defendants under Fla. Stat. § 48.193(1)(a)(7).

### 3. Tortious Acts Committed within Florida

George & Co. finally renews its partially successful argument that Defendants are subject to Fla Stat. § 48.193(1)(a)(2) and (1)(a)(6) because they committed tortious acts and caused injury in Florida. For Florida's long-arm statute, a tortious act occurs in Florida when it causes injury there. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1353 (11th Cir. 2013). As the Court held, George & Co. has presented enough evidence to extend the long-arm statute to Spin Master Inc., Spin Master Ltd., Cardinal, and Berger. The new evidence presented by Defendants does not alter the Court's analysis because it remains clear that the effects of the torts were felt in Florida.

George & Co. hopes to rope in Spin Master Corp. and Spin Master U.S. Holdings by pleading that Cardinal became their agent when Spin Master acquired Cardinal and "utilized and continue to utilize Cardinal as their agent and alter ego to advertise, promote, and sell Spin Master products." (Doc. 55 at 17). A foreign parent corporation is normally "not subject to the jurisdiction of a forum state merely because a subsidiary is doing business there." *Meier*, 288 F.3d at 1272. But agency-based jurisdiction exists "where the parent entity exercises operational control over a subsidiary." *Hard Candy, LLC v. Hard Candy Fitness, LLC*, 106 F. Supp. 3d 1231, 1240-41 (S.D. Fla. 2015). Defendants

rebutted George & Co.'s agency allegations with evidence of Cardinal's independence from its parent company, Spin Master Ltd., and the other Spin Master Defendants. (Doc. 64-2 at 4-7). George & Co. responded with evidence of control exercised by Spin Master Ltd. and Spin Master Inc., but not with evidence relating to Spin Master Corp. and Spin Master U.S. Holdings. (Doc. 67 at 2-4). So the Florida long-arm statute does not extend to these latter two Spin Master Defendants.

### C. Due Process

Having found Florida's long-arm statute to apply to some Defendants, the Court must again decide whether due process permits jurisdiction in this forum. Courts in the Eleventh Circuit apply a three-part test in specific-jurisdiction cases:

> (1) whether the plaintiff's claims arise out of or relate to at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice.

*Rowe*, 723 F. App'x at 875 (internal quotation marks omitted). The plaintiff must prove the first two prongs. *Id.* In this part of the analysis, courts focus on a defendant's "contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Aviation One of Fla., Inc. v. Airborne Ins. Consultants (PTY), Ltd.*, 722 F. App'x 870, 880 (11th Cir. 2018) (citing *Walden v. Fiore*, 571 U.S. 277 (2014)). The contacts cannot be merely "random, fortuitous, or attenuated." *Id.* And "the plaintiff cannot be the only link between the defendant and the forum." *Id.* Minimum contacts are not established by the mere fact that a defendant signed a contract with a forum resident, or by "mere injury to a forum resident." *Id.*

An alternative test is available in intentional-tort cases. *Id.* at 879. The *Calder* effects test "requires a showing that the defendant (1) committed an intentional tort (2) that was directly aimed at the forum, (3) causing an injury within the forum that the defendant should have reasonably anticipated." *Id.* at 879-80 (quoting *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1220 n.28 (11th Cir. 2009)). It is not enough to show that a defendant intentionally caused damage to a company based in Florida. "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden*, 571 U.S. at 290.

George & Co. urges the Court to adopt a third test based on stream-of-commerce. George & Co. proposes "that selling an infringing product through national retailers, when done with the intention of developing a national market for the product, is sufficient to support jurisdiction over the supplier in the forums where the national retailer sells the product." (Doc. 67 at 13). While the plurality opinion in *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873 (2011) recognized there may be exceptions to the general purposeful-availment test in intentional-tort cases, neither the Supreme Court nor the Eleventh Circuit has used the stream-of-commerce test as such an alternative. In fact, the *Nicastro* plurality found that the stream-of-commerce test cannot displace the general rule in a products-liability case. *Id.* at 877-78. The Court here likewise declines to adopt the proposed stream-of-commerce standard as an alternative. Instead, placing goods into commerce with the expectation of nationwide distribution is a fact the Court will consider when applying the existing tests.

    1. <u>Cardinal</u>

Cardinal is a New York corporation with a principal place of business in New York. (Doc. 63-1 at 14). It has no property or employees in Florida and does not conduct business within the state or direct its advertising to consumers in Florida. (Doc. 63-1 at 14). But some of Cardinal's products, including PassPlay, are sold in Florida stores. (Doc. 63-1 at 14).

The Court once found that Cardinal used George & Co.'s uniform product code ("UPC") and the LCR mark to trick Walmart into replacing LCR with PassPlay on its retail shelves in Florida. (Doc. 46). But the Defendants have presented evidence in support of their Motion that sheds new light on the switch. (Doc. 64-2). It started when Spin Master offered to sell PassPlay to Walmart. (Doc. 64-2 at 10). Walmart's Buyer for Games, Leslie Treat, recognized PassPlay as equivalent to the LCR game she was buying from Cardinal, so she contacted Berger. (Doc. 64-2 at 10). Thus prompted, Berger contacted Spin Master and learned that distributing PassPlay would be more profitable. (Doc. 64-2 at 11). Berger and Treat agreed that Cardinal would sell Walmart PassPlay instead of LCR when Cardinal's LCR inventory ran out, which occurred in December 2017. (Doc. 64-2 at 11). At Walmart's request and with help from Spin Master, Cardinal added PassPlay to Walmart's database system as a product equivalent to LCR. (Doc. 64-2 at 12-13). Cardinal's sales of PassPlay to Walmart start with purchase orders sent by Walmart in Arkansas to Cardinal in New York. Walmart or its agents pick up the products in New York or California before distributing them to stores. (Doc. 64-2 at 2). George & Co. has rebutted none of these facts.[3]

---

[3] George & Co. submitted an affidavit from Treat in which she testifies, "At no time was I made aware that there was a change in the ownership of the 'LCR' or 'Left Center Right'

10

In short, Cardinal did not manipulate Walmart into selling PassPlay in Florida. Rather, Berger negotiated with Walmart employees in Arkansas to sell PassPlay, and the sales occurred in New York and California. Defendant's new evidence severs the link George & Co. had built between Cardinal and Florida with the independent actions of a third party. It is Walmart, not Cardinal, that chose to sell PassPlay in its Florida stores. And Walmart's sales of PassPlay to consumers in Florida cannot form the relationship between Cardinal, Florida, and this case necessary for personal jurisdiction because "the relationship must arise out of contacts that the defendant *himself* creates with the forum State." *See Walden*, 571 U.S. at 284 (internal quotations omitted).

George & Co. also points to the Agreement as a basis for jurisdiction over Cardinal. Cardinal's consent to this jurisdiction in the Agreement's forum-selection clause likely satisfies due-process requirements. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n.14 (1985). But George & Co. did not plead a *prima facie* case for jurisdiction under the Florida long-arm statute's contract or consent prongs, as explained above. Because "[f]ederal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons," this Court will not exercise jurisdiction on grounds explicitly excluded from Florida's long-arm statute.

George & Co. has not shown that this Court can exercise jurisdiction over Cardinal, but, as stated above, the Court will allow George & Co. another amended complaint to address the pleading deficiency that sunk its consent-jurisdiction argument.

2. <u>Spin Master Inc. and Spin Master Ltd.</u>

---

game or the game itself or of the company with which I was dealing." (Doc. 58-15). But Treat's testimony is not inconsistent with Defendants' evidence.

The Court held before that George & Co. failed to establish personal jurisdiction over Spin Master Inc. and Spin Master Ltd. (Doc. 46 at 19-22). In its Third Amended Complaint and its Response to Defendants' Motion, George & Co. attacks this issue with three arguments: (1) Spin Master sells and ships PassPlay directly to Florida buyers; (2) Spin Master can be haled into this Court through its agent, Cardinal; and (3) the Court should apply the stream-of-commerce test to assert jurisdiction over Spin Master. (Doc. 55; Doc. 67). Having already declined to adopt the stream-of-commerce test, the Court will address the two remaining arguments.

In response to George & Co.'s first argument, Defendants rebutted George & Co.'s allegations of sales in Florida with testimony that "Spin Master Ltd. has not shipped any product into Florida and has no sales in Florida" and that Spin Master Inc. sells PassPlay to national retailers outside Florida, who distribute and sell the game throughout the country, including in Florida. (Doc. 64-1 at 4-5). With the burden thus shifted back, George & Co. produced spreadsheets from a warehousing company called DSV Solutions Inc. (Doc. 67-1). The spreadsheets show that DSV warehoused products described as "LCR in Tin" before the goods were shipped to buyers, including buyers in Florida. (Doc. 67-1 at 7-68, 83-110). The spreadsheets do not mention Spin Master, yet George & Co. President Peter Smilanich nevertheless interpreted them as proof that Spin Master sold PassPlay to stores in Florida and shipped PassPlay into the state. (Doc. 67-1 at 2-3). But Spin Master's Christopher Harrs clarified Spin Master's relationship with DSV. DSV receives and stores imported shipments of PassPlay. When Spin Master Inc. receives a purchase order, it sends an invoice to DSV, DSV labels the product to be shipped, and the buyer (or its carrier) takes possession of the shipment at DSV's

warehouses in California.  The buyer is then responsible for shipping the product to its destination.  (Doc. 68-1 at 7-5).  Given this testimony, the Court finds that the DSV spreadsheets do not prove that Spin Master ships PassPlay to Florida, despite Smilanich's speculative and self-serving interpretation.

George & Co.'s argument that the Court can exercise jurisdiction over Spin Master through its agent, Cardinal, fails because George & Co. has not established this Court's jurisdiction over Cardinal.  Even if George & Co. shows consent jurisdiction over Cardinal in a fourth amended complaint, the agency theory will not ensnare Spin Master because Cardinal consented years before allegedly becoming Spin Master's agent and thus could not have consented at Spin Master's direction.

After three attempts and ample opportunity to conduct discovery, George & Co. has not shown it can produce evidence that supports this Court's jurisdiction over Spin Master.  Nor has George & Co. requested transfer to an appropriate venue.  The Court will thus dismiss the claims against the Spin Master Defendants.

3.  Joel Berger

The Court has found that it lacks jurisdiction over Berger.  (Doc. 46 at 24).  Since then, George & Co. has not pled or proven any additional contacts between Berger and Florida.  George & Co. focused instead on bolstering allegations of Berger's fiduciary relationship with George & Co. and his active involvement in Cardinal's operations.  (*See, e.g.,* Doc. 55 at 3-5).  These allegations do not alter the Court's earlier analysis, and the claims against Berger will be dismissed.

Accordingly, it is now

**ORDERED:**

13

1.  Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint (Doc. 63)
    is **GRANTED**.

2.  Plaintiff George & Company LLC may file a Fourth Amended Complaint against
    Cardinal Industries, Inc. following this Order on or before **January 9, 2019**.  If
    George & Co. does not timely file a Fourth Amended Complaint, the Court will
    dismiss this case without further notice.

**DONE** and **ORDERED** in Fort Myers, Florida this 27th day of December, 2018.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record